# In the United States Court of Federal Claims

No. 18-1671C
(E-Filed:  September 23, 2019)[1]

|  |  |  |
|---|---|---|
| HARMONIA HOLDINGS GROUP, LLC, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Post-Award Bid Protest; Remand for Organizational Conflict of Interest (OCI) Investigation; Agency Findings Regarding Alleged OCIs Not Irrational; Agency Evaluation of Proposals Not Arbitrary. |
| THE UNITED STATES, | ) ) | |
| Defendant, | ) ) | |
| and | ) ) | |
| PRECISE SOFTWARE SOLUTIONS, INC., | ) ) ) | |
| Intervenor-Defendant. | ) ) ) | |

W. Brad English, Huntsville, AL, for plaintiff.  J. Andrew Watson, III, Emily J. Chancey, J. Dale Gipson, and Michael W. Rich, of counsel.

Cameron Cohick, Senior Trial Counsel, with whom were Joseph H. Hunt, Assistant Attorney General, Robert E. Kirschman, Jr., Director, Patricia M. McCarthy, Assistant Director, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for defendant.  Robyn A. Littman, Office of the General Counsel, United States Department of Health and Human Services, of counsel.

---

[1]      This opinion was issued under seal on August 29, 2019.  Pursuant to ¶ 4 of the ordering language, the parties were invited to identify source selection, proprietary or confidential material subject to deletion on the basis that the material was protected/privileged.  No redactions were proposed by the parties.  Thus, the sealed and public versions of this opinion are identical, except for the publication date and this footnote.

William T. Welch, Reston, VA, for intervenor-defendant.

OPINION

CAMPBELL-SMITH, Judge.

This post-award bid protest is before the court on plaintiff's and defendant's cross-motions for judgment on the administrative record (AR), brought pursuant to Rule 52.1 of the Rules of the United States Court of Federal Claims (RCFC). The court has reviewed the AR, ECF No. 35; the second amended and restated complaint, ECF No. 50; plaintiff's motion for judgment on the AR, ECF No. 51; defendant's cross-motion for judgment on the AR, ECF No. 53; plaintiff's response/reply brief, ECF No. 54; defendant's reply brief, ECF No. 55; and, intervenor-defendant's response/reply brief, ECF No. 56. Oral argument was deemed unnecessary. For the reasons set forth below, plaintiff's motion for judgment on the AR is **DENIED**, and defendant's cross-motion for judgment on the AR is **GRANTED**.

I.    Background

   A.    Request for Quote (RFQ) # 17-223-SOL-00052

The procuring agency here is the Food & Drug Administration (FDA) of the United States Department of Health and Human Services (HHS). The competition that underlies this protest is for information technology services to support the agency's "Emergency Operations Network Incident Management System (EON IMS)." ECF No. 35-7 at 16. The RFQ issued on May 22, 2018. Id. The procurement vehicle, a Blanket Purchase Agreement (BPA), is a total small business set-aside, and is restricted to holders of General Services Administration Federal Supply Schedule (FSS) Contracts. Id. at 16, 19.

Potential offerors submitted questions about the RFQ. Id. at 204-15. Through the agency's answers, offerors learned that the incumbent contractor for EON IMS would be ineligible for this procurement because it is not a small business. Id. at 214. The incumbent contractor is Dovel Technologies, LLC (Dovel). ECF No. 35-6 at 3. The offerors also learned that the agency would not disclose the "current level of effort by labor category," obliging the offerors to make their own estimates of the labor hours required to perform the contract. ECF No. 35-7 at 210; see also ECF No. 51 at 31 (stating that "offerors [had] to rely on their best estimates of labor hours to formulate their fixed price bids").

   B.    Proposals Received and Contract Awarded

Five responsive proposals were received by the FDA. ECF No. 35-8 at 172, 181. Plaintiff, Harmonia Holdings Group, LLC (Harmonia), submitted a proposal that

received technical ratings that were in line with the other four proposals, and its proposal had the second lowest evaluated price.  Id. at 181-82.  Intervenor-defendant, Precise Software Solutions, Inc. (Precise), submitted a proposal which received a technical rating that was slightly higher than the other proposals, and which had the lowest evaluated price.  Id. at 181-83.  Precise was selected for award as providing the best value to the agency.  Id. at 183.  Precise's technical proposal noted that Precise had chosen to partner with Dovel, the incumbent contractor.  ECF No. 35-7 at 453.

C.      Two Protests, Two Remands to Investigate Organizational Conflict of Interest (OCI) Allegations, and Two Amended Complaints

After receiving a debriefing, Harmonia filed a size protest with the contracting officer on October 24, 2018, which was forwarded to the Small Business Administration (SBA).  ECF No. 35-9 at 1-104.  The size protest asserted that Precise's proposal does not qualify for the EON IMS small business set-aside, because the partnering affiliation with Dovel renders Precise "other than small."  Id. at 6.  Because of a timeliness issue, the SBA did not reach the merits of Harmonia's argument and dismissed the protest.  Id. at 105-06.

On October 30, 2018, Harmonia filed its bid protest in this court.  The court adopted the parties' proposed expedited briefing schedule to resolve the merits of Harmonia's protest.  See ECF No. 14 (scheduling order).  Within two weeks, however, the government filed an unopposed motion for a remand to allow the agency to investigate OCI allegations raised by Harmonia.  See ECF No. 19.  The remand ordered by the court produced a report from the contracting officer (CO) detailing her OCI investigation (2018 OCI investigation).  See ECF No. 35-9 at 109-97.

Because the CO found that no OCIs marred this procurement, the parties again proposed an expedited briefing schedule to resolve the merits of Harmonia's protest.  See ECF No. 22 (joint status report).  The court set an expedited briefing schedule with the goal of issuing a ruling on the merits before the agency's voluntary stay of Precise's contract performance expired.  See ECF No. 23 (scheduling order).  Before any of the briefs in that schedule were filed, however, defendant filed an unopposed motion for a remand to investigate additional OCI allegations, and plaintiff filed an amended complaint setting forth some of these new OCI allegations.  See ECF No. 26 (remand motion); ECF No. 27 (amended complaint).

The court ordered the second remand, see ECF No. 28, and granted a motion to extend the second remand, see ECF No. 32.  At the close of the remand, the CO produced a report of her second OCI investigation (2019 OCI investigation).  See ECF No. 35-9 at 198-255.  Because the CO found, once more, that no OCI marred this procurement, the parties again proposed an expedited briefing schedule to resolve the merits of Harmonia's protest.  See ECF No. 33 (joint status report).

The court set a final expedited briefing schedule, mindful of the agency's extension of the voluntary stay of Precise's contract performance through August 31, 2019.  ECF No. 34 (scheduling order).  Along with the briefs required by that order, plaintiff filed a second amended complaint which added a new challenge to the agency's best value award decision.  See ECF No. 50.  The court reserves its discussion of specific OCI allegations, and specific allegations of proposal evaluation error, for the analysis section of this opinion.[2]

II.     Legal Standards

A.      Bid Protest Standard of Review

As the United States Court of Appeals for the Federal Circuit has stated, "the proper standard to be applied in bid protest cases is provided by 5 U.S.C. § 706(2)(A):  a reviewing court shall set aside the agency action if it is 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.'"  Banknote Corp. of Am. v. United States, 365 F.3d 1345, 1350-51 (Fed. Cir. 2004) (citing Advanced Data Concepts, Inc. v. United States, 216 F.3d 1054, 1057-58 (Fed. Cir. 2000)).  Under this standard, a procurement decision may be set aside if it lacked a rational basis or if the agency's decision-making involved a clear and prejudicial violation of statute, regulation or procedure.  Emery Worldwide Airlines, Inc. v. United States, 264 F.3d 1071, 1085-86 (Fed. Cir. 2001) (citing Impresa Construzioni Geom. Domenico Garufi v. United States, 238 F.3d 1324, 1332-33 (Fed. Cir. 2001)).  "The arbitrary and capricious standard applicable [in bid protests] is highly deferential."  Advanced Data Concepts, 216 F.3d at 1058.

De minimis errors in the procurement process do not justify relief.  Grumman Data Sys. Corp. v. Dalton, 88 F.3d 990, 1000 (Fed. Cir. 1996) (citing Andersen Consulting v. United States, 959 F.2d 929, 932-33, 935 (Fed. Cir. 1992)).  The bid protest plaintiff bears the burden of proving that a significant error marred the procurement in question.  Id. (citing CACI Field Servs., Inc. v. United States, 854 F.2d 464, 466 (Fed. Cir. 1988)).  Examples of arbitrary and capricious agency action include "when the agency 'entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or [the decision] is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.'"  Ala. Aircraft Indus., Inc.-Birmingham v. United States, 586 F.3d 1372, 1375 (Fed. Cir. 2009) (Alabama Aircraft) (quoting Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 43 (1983)) (alteration in original).  The court will,

---

[2]     In light of the compressed schedule for rendering a decision on the merits of this protest, only plaintiff's principal arguments are addressed in this opinion.  The court has considered all of plaintiff's arguments, but none justify an injunction of the contract award to Precise.

however, "uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned." Bowman Transp., Inc. v. Arkansas-Best Freight Sys., Inc., 419 U.S. 281, 286 (1974) (citation omitted).

The agency's technical evaluation of proposals is reviewed with considerable deference because "technical ratings . . . involve discretionary determinations of procurement officials that a court will not second guess." E.W. Bliss Co. v. United States, 77 F.3d 445, 449 (Fed. Cir. 1996) (citations omitted).  Indeed, the Federal Circuit describes an agency's technical evaluation of proposals as "an inherently judgmental process requiring deference." Galen Med. Assocs., Inc. v. United States, 369 F.3d 1324, 1339 (Fed. Cir. 2004).  "'If the court finds a reasonable basis for the agency's action, the court should stay its hand even though it might, as an original proposition, have reached a different conclusion as to the proper administration and application of the procurement regulations.'" Honeywell, Inc. v. United States, 870 F.2d 644, 648 (Fed. Cir. 1989) (quoting M. Steinthal & Co. v. Seamans, 455 F.2d 1289, 1301 (D.C. Cir. 1971)).

B.      Permanent Injunctive Relief

As the Federal Circuit has held:

In deciding whether a permanent injunction should issue, a court considers: (1) whether, as it must, the plaintiff has succeeded on the merits of the case; (2) whether the plaintiff will suffer irreparable harm if the court withholds injunctive relief; (3) whether the balance of hardships to the respective parties favors the grant of injunctive relief; and (4) whether it is in the public interest to grant injunctive relief.

PGBA, LLC v. United States, 389 F.3d 1219, 1228-29 (Fed. Cir. 2004) (citing Amoco Prod. Co. v. Vill. of Gambell, Alaska, 480 U.S. 531, 546 n.12 (1987)).

III.    Analysis[3]

Throughout this litigation, plaintiff has alleged that Precise was given an unfair advantage in the EON IMS procurement through the personal relationships of FDA employees and Precise employees. ECF No. 50 at 12-14; ECF No. 51 at 25-36; ECF No. 54 at 6-17.  The record confirms that there are a number of personal relationships linking agency employees and the employees of Precise.  However, the agency investigated the potential OCIs which could have conferred an advantage upon Precise in this procurement.  As explained below, the court does not conclude, on this record, that the

---

[3]      The court's analysis is founded on facts recounted in the administrative record. These facts are largely undisputed, although the parties hotly contest the inferences the court should draw from the underlying facts.

agency's investigation was unreasonable, or that the agency's rejection of the OCI allegations before it was irrational.

Plaintiff also contends that the agency's evaluation of proposals, and consequently the agency's best value decision in favor of Precise, were arbitrary and capricious.  ECF No. 50 at 10-12, 15; ECF No. 51 at 36-41; ECF No. 54 at 17-20.  Defendant relies on the record of the evaluation by the agency to assert, first, that the evaluation was not flawed. ECF No. 53 at 40-47; ECF No. 55 at 14-21.  Further, defendant contends that the alleged flaws in the evaluation process would not have prejudiced Harmonia, because Harmonia's proposal could not have achieved a higher technical rating than Precise's proposal, and Precise offered the lowest price.  ECF No. 53 at 42-43, 47; ECF No. 55 at 17-18.  As explained below, the agency's evaluation of these two proposals and its best value award decision have not been shown to be arbitrary or capricious under the deferential standard of review applicable here.

The court begins with a review of the OCI investigations conducted by the agency, before examining the agency's evaluation of the offerors' technical proposals.

A.     Standard of Review for an Agency's OCI Determination

An early formulation of the OCI standard of review was articulated by the Federal Circuit in CACI, Inc.-Federal v. United States, 719 F.2d 1567 (Fed. Cir. 1983) (CACI): "[T]he opportunity for and the appearance of impropriety in [the procurement] process [is] not an adequate or proper basis for enjoining the award of the contract."  Id. at 1581. A court should not "base[] its inferences of actual or potential wrongdoing by the Department on suspicion and innuendo, [but should, instead, require] hard facts."  Id. at 1582.

A further development of the OCI standard explains how the court assesses the agency's investigation into OCI allegations:

> The issue before [the court] is whether an organizational conflict of interest is so pervasive as to have created an advantage to one bidder over the others, and whether the contracting officer failed to exercise proper discretion and to follow proper procedures in making the determination that no organizational conflict of interest existed.

PAI Corp. v. United States, 614 F.3d 1347, 1351 (Fed. Cir. 2010).  The agency's OCI determination will not be overturned unless it fails the arbitrary and capricious standard applicable generally to bid protests.  Id. at 1352 (citing John C. Grimberg Co. v. United States, 185 F.3d 1297, 1300 (Fed. Cir. 1999)).  "To demonstrate that such [an OCI] determination is arbitrary or capricious, a protester must identify 'hard facts'; a mere inference or suspicion of an actual or apparent conflict is not enough."  Id. (citing CACI, 719 F.2d at 1581; Filtration Dev. Co. v. United States, 60 Fed. Cl. 371, 380 (2004)).

B.      2018 OCI Investigation—Two Personal Relationships Examined

Harmonia conveyed its first set of OCI allegations directly to the CO, and indirectly to the agency through the allegations in its original complaint, in October 2018. ECF No. 1 at 9, 11-12 (complaint); ECF No. 35-9 at 204.  The CO had awarded the EON IMS contract before learning of these OCI allegations.  ECF No. 35-9 at 203-04.  Precise hired a recently retired FDA employee, Mr. George Brush, before the RFQ issued; Precise also engaged another employee before the RFQ issued, Ms. Jen Nguyen, who is the sister of Ms. Tina Nguyen, an FDA employee.  ECF No. 50 at 9, 13; ECF No. 35-9 at 121, 127.  Ms. Jen Nguyen assisted in the preparation of the proposal Precise submitted in response to the RFQ.  ECF No. 35-9 at 128-31.  Although Mr. Brush read the RFQ, he did not work on Precise's proposal.  Id. at 122-23.

The court observes, at the outset of its discussion of the 2018 OCI investigation, that Precise has done extensive work for the FDA in recent years.  See ECF No. 35-6 at 25 ("Precise is a certified 8(a) company whose roots are founded in supporting FDA for over a decade.").  Further, the record shows that three of Ms. Tina Nguyen's relatives work at the FDA.  ECF No. 35-9 at 217.  The AR filed in this litigation demonstrates the complexity of personal and professional relationships within agencies, and among government agencies and the corporate contractors that serve them.

1.      Mr. George Brush, a Former FDA Employee Now Employed by Precise

For the OCI allegations addressing Mr. Brush's employment by Precise, the CO relied on four main sources of information.  She obtained declarations from Mr. Zhensen Huang, the CEO of Precise, and Mr. Brush himself, wherein these individuals responded specifically to a number of her questions.  ECF No. 35-9 at 111-12, 116-26.  She also conducted interviews and received responses to questionnaires from various FDA employees.  Id. at 111-12.  The CO reviewed the organizational structure within pertinent units of the FDA, and how that structure would impact access to confidential information regarding the EON IMS procurement.  Id. at 112-13.  Finally, the CO reviewed the procedures followed by the agency in the procurement which are meant to safeguard procurement integrity, as well as the non-disclosure and conflict of interest forms signed by FDA personnel involved in this procurement.  Id. at 114.

Based on her review of this information, the CO found that Mr. Brush had no access to sensitive information regarding the EON IMS procurement and that his employment by Precise did not constitute a violation of any employment restrictions on federal employees.  Id. at 113.  Nor did the CO find any evidence that Mr. Brush had communicated with FDA employees about the EON IMS procurement.  Id.  The CO concluded that the employment of Mr. Brush by Precise did not create an actual or potential OCI.  Id. at 114.

Having reviewed the parties' arguments and the documentation in the AR, the court finds that the CO's determination is not unreasonable as to Mr. Brush and any OCI related to his employment by Precise. There are no hard facts in the AR that undermine the rationality of her 2018 OCI investigation into Mr. Brush's employment at Precise. Plaintiff's bid protest cannot be sustained on this ground. CACI, 719 F.2d at 1582.

           2.       Ms. Jen Nguyen, a Precise Employee at the Time Precise Responded to the RFQ, and Her Sister, Ms. Tina Nguyen, an FDA Employee

The CO investigated the relationship between Ms. Jen Nguyen, working at Precise, and Ms. Tina Nguyen, working at the FDA, in a similar fashion.[4] For the OCI allegations addressing Ms. Jen Nguyen's employment by Precise, the CO obtained declarations from Mr. Huang, the CEO of Precise, and Ms. Jen Nguyen, wherein these individuals responded specifically to a number of the CO's questions. ECF No. 35-9 at 111-12, 116-20, 127-32. The CO also conducted interviews and received responses to questionnaires from various FDA employees, and had some email contact with Ms. Tina Nguyen. Id. at 111-12, 149-51. The CO reviewed the organizational structure within pertinent units of the FDA, and how that structure would impact access to confidential information regarding the EON IMS procurement. Id. at 112-13. Finally, the CO reviewed the procedures followed by the agency in the procurement which are meant to safeguard procurement integrity, as well as the non-disclosure and conflict of interest forms signed by FDA personnel involved in this procurement. Id. at 114.

Based on her review of this information, the CO found that Ms. Jen Nguyen had no access to sensitive information regarding the EON IMS procurement through her sister's employment at the FDA. Id. at 113. The CO found no evidence that Ms. Jen Nguyen had communicated with any FDA employee about the EON IMS procurement. Id. The CO concluded that Precise's employment of Ms. Jen Nguyen did not create an actual or potential OCI. Id. at 114. The court does not find the CO's conclusion in this regard to be unreasonable, based on the record of the 2018 OCI investigation. Nor is this OCI allegation supported by hard facts that would justify an injunction of the contract award to Precise. CACI, 719 F.2d at 1582.

           C.       2019 OCI Investigation—Two Precise Employees Share Concerns About Precise's Competition for FDA Procurements[5]

---

[4]     Additional allegations concerning the Nguyen sisters were raised in early 2019; those allegations will be discussed infra.

[5]     The court has considered every document in the record relevant to the 2019 OCI investigation, but limits its discussion here to a general summary of the agency's investigation into the second set of OCI allegations.

1.      Mr. Neil Wolfe, a Former Employee of Precise Who Made Negative
          Allegations Regarding Precise to the FDA

Mr. Neil Wolfe worked as the contracting manager for Precise until his
employment ended on or about January 25, 2019.  ECF No. 35-9 at 117, 216.  On January
28, 2019, Mr. Wolfe contacted a number of FDA officials stating that there were
irregularities in Precise's conduct during various FDA procurements, including the EON
IMS procurement, but he did not file a whistleblower complaint.  Id. at 198, 216.  These
allegations triggered an investigation by various entities within HHS, including the Office
of Internal Affairs (HHS-OIA investigation).  Later in the HHS-OIA investigation, Mr.
Wolfe told investigators that he had no evidence of impropriety on the part of Precise,
that the calls he made to the FDA on January 28, 2019, were expressions of anger at his
termination by Precise, and that he "regretted acting impulsively."  Id. at 218.  HHS-OIA
concluded that there was no reason to investigate Mr. Wolfe's allegations further.[6]  Id. at
219.

Thus, while in January and February of 2019, Mr. Wolfe presented to HHS and
Harmonia allegations of Precise's improper behavior including "kickbacks, bribes and
backdoor deals," falsified declarations, and the shared living arrangements of the Nguyen
sisters and Precise's CEO, id. at 216; see also ECF No. 50 at 9 (stating that Mr. Wolfe
resigned "due to blatant violations of ethics law and regulation by Precise"), Mr. Wolfe's
later conversations with investigators backed away from these assertions, ECF No. 35-9
at 216-19.  In addition to the materials that informed the CO's 2018 OCI investigation
and conclusions, her review of Mr. Wolfe's OCI allegations in 2019 relied on the
following sources of information:

> the "Amended, Restated and Supplemental Complaint" Harmonia filed in the
> bid protest [(ECF No. 50)], the allegations [Mr. Wolfe] reported to FDA staff
> [on January 28, 2019], . . . the [HHS-OIA investigation report], the
> contracting officer's discussions with agency investigators, and the
> contracting officer's conversation with Ms. [Tina] Nguyen.

ECF No. 35-9 at 198-99.  Based on this information, the CO concluded that,
notwithstanding Mr. Wolfe's accusations presented in January and February 2019, there
was no OCI, and Precise did not "improperly obtain" confidential procurement
information in the EON IMS procurement.  Id. at 201.

---

[6]      Mr. Wolfe's report that there was yet another personal connection between a
Precise employee and an FDA employee, in this instance because they are married, was
confirmed.  ECF No. 35-9 at 217.  The CO determined that the marital relationship
between the FDA employee and the Precise employee did not create a conflict of interest
in this procurement.  Id. at 201.

The CO's investigation was not arbitrary and capricious under the standard set forth in PAI. 614 F.3d at 1351-54. It was not arbitrary or capricious for her to conclude, upon her review of Mr. Wolfe's accusations and relevant evidence, that no actual or potential OCI had occurred. Although not every conclusion in her analysis is beyond dispute, her investigation was reasonably focused on uncovering hard facts that might show that an OCI favored Precise in this procurement.[7] The statements provided by Mr. Wolfe throughout the HHS-OIA investigation, and all other relevant evidence, did not contradict her conclusion that no OCI occurred. On this record, the CO "exercise[d] proper discretion and . . . follow[ed] proper procedures in making the determination that no organizational conflict of interest existed." PAI, 614 F.3d at 1351.

The close personal relationships in the record of this case are somewhat analogous to those discussed in CACI. In CACI, members of the procuring agency's team who managed the proposal evaluation process had close personal ties with a contractor's executive who directed the preparation of the winning bid, and who also negotiated with the agency during discussions. 719 F.2d at 1570-71, 1577-78.

There was no evidence, however, that these evaluation team members showed any bias in favor of the awardee, or that improper communications occurred to favor the awardee in the competition. Id. at 1578-81. Even the fact that the awardee received a greater increase in its technical score than the increase given to the protestor's proposal, once proposal revisions were submitted, did not show that favoritism played any role in the agency's award decision. Id. at 1580. The trial court's injunction of the award, in the view of the Federal Circuit, improperly relied on "suspicion and innuendo, not on hard facts." Id. at 1582.

Mr. Wolfe's evanescent allegations of impropriety, and the record evidence here, do not meet the CACI standard for hard facts. Unlike the situation in CACI, where the agency employees who were alleged to have acted in favor of the awardee were those entrusted with the evaluation of proposals, id. at 1575, here there is no substantive link between the FDA evaluators and Precise employees. The CO's 2019 OCI investigation

---

[7]     The CO believed that Mr. Wolfe was under no pressure to recant his allegations of impropriety once he had been paid his severance by Precise. ECF No. 35-9 at 200. As plaintiff observes, the terms of the severance agreement were not disclosed to the CO. ECF No. 51 at 28-30. Notwithstanding any potential pressure on Mr. Wolfe to recant his OCI allegations, the record contains no hard facts which contradict the CO's OCI findings. Cf. United States v. Purdue Pharma L.P., 600 F.3d 319, 326-33 (4th Cir. 2010) (noting that the severance agreement at issue in that suit contained an enforceable promise that remained valid after the employer paid the severance amount).

was not unreasonable in light of the allegations of Mr. Wolfe and the other evidence before her.  This protest ground, too, is unavailing.

2.      Mr. Gene Donohue, an Author of Precise's Bid for the EON IMS Contract Who Made Negative Allegations Regarding Precise to Harmonia while Seeking Employment with Harmonia

Mr. Gene Donohue was identified by Precise as one of the authors and reviewers of that company's proposal submitted in response to the RFQ.  ECF No. 35-9 at 117.  Mr. Donohue presented his allegations of impropriety regarding Precise to Harmonia via a telephone call; these allegations were later relayed to HHS via a letter from Harmonia's counsel to defendant's counsel.  Id. at 232-33.  Once Harmonia's recitation of Mr. Donohue's allegations was referred to HHS, these allegations were incorporated into both the HHS-OIA investigation and the 2019 OCI investigation by the CO.  Id. at 200, 218.  Harmonia's letter was dated February 20, 2019, id. at 232-33, by which time the investigation into Mr. Wolfe's allegations of impropriety was already underway, id. at 216-17.

The following account of Mr. Donohue's allegations is excerpted from Harmonia's letter:

Among other things, Mr. Donohue described his concerns regarding what he perceived to be sudden changes between Red and Gold reviews of Precise's proposals, and noted his observation that the changes related to proposal elements he deemed critical to subsequent awards.  Mr. Donohue informed Mr. [Jai Saboo, Harmonia's COO,] of his belief that Precise has provided inaccurate responses to questions posed in connection with the ongoing investigation.  Mr. Donohue claims that Precise removed his access to information regarding the project at issue in this protest after he began to ask questions about the investigation.

Lastly, Mr. Donohue apparently believes that Precise has some advance information about an FDA project called "FURLS."  According to Mr. Donohue, Precise management has informed Precise personnel that it will be declared the winner of that effort.  Indeed, Mr. Donohue believes that Precise has already leased space for work in connection with that contract.

ECF No. 35-9 at 232.

The court observes that the second paragraph quoted here references a different procurement, the FURLS procurement, not the EON IMS procurement.  Even the first paragraph speaks in general terms of "proposals," plural, and an unidentified "investigation."  Id.  The court also notes that the FURLS procurement mentioned in this letter was the subject of a separate HHS investigation, and that Mr. Wolfe had expressed

allegations of impropriety regarding the FURLS procurement when he made his calls to multiple FDA employees on January 28, 2019.  Id. at 216.

It is clear from the record that the HHS-OIA investigation and the CO's 2019 OCI investigation treated the letter from Harmonia, relaying Mr. Donohue's allegations, as a continued expression of the allegations received from Mr. Wolfe in January and February 2019.  Id. at 200, 218.  HHS-OIA followed up with Precise, in person and by telephone, about these allegations.  Id. at 218.  Most of Mr. Donohue's allegations were addressed by Mr. Huang, except that there is no mention of Mr. Huang's rebuttal of the allegation of "sudden changes" to Precise's Red and Gold proposal versions.  Id.  More generally, Mr. Huang "denied any wrongdoing by Precise in the procurement process."  Id.  Neither HHS-OIA nor the CO interviewed Mr. Donohue.

Harmonia argues that it was irrational for the CO to fail to conduct an interview with Mr. Donohue to follow up on the allegations in Harmonia's letter.  ECF No. 51 at 30-31.  The government argues that Harmonia's recitation of Mr. Donohue's allegations, which were largely duplicative of Mr. Wolfe's allegations, was adequately explored through the HHS-OIA investigation and the 2019 OCI investigation by the CO.  ECF No. 53 at 34-35.  The court finds that the CO acted within her discretion to review Mr. Donohue's allegations by means other than an interview with Mr. Donohue.  See PAI, 614 F.3d at 1351 (stating that the issue is "whether the contracting officer failed to exercise proper discretion and to follow proper procedures in making the determination that no organizational conflict of interest existed").

The agency noted, first, that Mr. Donohue contacted Mr. Saboo because he was looking for work, and that "he was actively looking to leave Precise."  ECF No. 35-9 at 218.  Also, Mr. Wolfe told agency investigators that he had spoken to Mr. Donohue about the HHS-OIA investigation, and that "he did not believe that [Mr.] Donohue had information regarding the allegations at Precise."  Id.  HHS-OIA did not believe that the allegations from Mr. Wolfe and Mr. Donohue required further investigation, based on their inquiries with FDA staff, Mr. Saboo, and Mr. Huang.  Id. at 219.

The CO relied on the HHS-OIA investigation report and her conversations with the HHS-OIA investigators to reject Mr. Donohue's allegations that were relayed in the letter from Harmonia.  She concluded that

> there is no evidence to support Mr. Donohue's allegations of Precise conflicts, as conveyed by Harmonia.  The agency investigators found that Mr. Wolfe was the sole source of Mr. Donohue's allegations of Precise conflicts, and, as explained above, there is no evidence to support Mr. Wolfe's allegations of Precise conflicts.  The investigators also found that at the time Mr. Donohue made his allegations to Harmonia about Precise conflicts, he was seeking employment with Harmonia and appeared to offer allegations about Precise to achieve that goal.

Id. at 200.  The court notes that the CO did not specifically address each of the OCI allegations in the letter recapitulating Mr. Donohue's telephone call to Mr. Jaboo.

As plaintiff points out, the allegation of "sudden changes" to Precise's Red and Gold proposal versions, attributed to Mr. Donohue, raises a question of "unfairly obtained information."  ECF No. 54 at 14.  Yet, Mr. Wolfe's allegations regarding the close personal relationships between FDA employees and Precise employees raised the same question.  The CO had answered that question through her investigation into Mr. Wolfe's allegations.  Thus, her conclusion that "there is no evidence to support Mr. Wolfe's allegations of Precise conflicts" also informs her conclusion that "there is no evidence to support Mr. Donohue's allegations of Precise conflicts, as conveyed by Harmonia."  ECF No. 35-9 at 200.

Having reviewed all of the evidence before her, including the allegations of Mr. Donohue relayed by Harmonia, the CO found that "Precise did not at any time improperly obtain, or have advance access to source selection information, contractor bid or proposal information, proprietary information, or any such information that was not available to other offerers."  Id. at 201.  Further, the CO concluded that "the facts of this case provide no basis for concluding that the integrity of the EON IMS procurement has been compromised."  Id.  The court, on this record, does not find that the CO's investigation into Mr. Donohue's allegations was irrational, or that she did not have the discretion to review his allegations based on evidence other than an interview.  The record contains no hard facts which contradict the CO's finding in her 2019 OCI investigation that there was no OCI on the part of Precise that required her intervention.

D.     Plaintiff's Suggestion that Precise Improperly Obtained the Independent Government Cost Estimate for the EON IMS Contract

For its final OCI allegation, plaintiff points to the labor hours for the contract's base year set forth in Precise's proposal and suggests that Precise must have had improper access to the agency's Independent Government Cost Estimate (IGCE) to arrive at this figure.  ECF No. 51 at 31-34.  The "razor-slim" difference between the IGCE and Precise's labor hours was, according to plaintiff, "improbably[ ]close," id. at 32, and should have been investigated as evidence of an OCI favoring Precise, id. at 32-34.  The government argues that there could be many reasons for the close margin between the labor hours set forth in Precise's proposal and the IGCE, and concludes that plaintiff's inference of an OCI in this regard is mere "speculation."  ECF No. 53 at 36.

The court has considered all of the arguments presented by the parties on this OCI allegation.  ECF No. 51 at 31-34 & nn.7-10; ECF No. 53 at 36-38 & nn.5-6; ECF No. 54 at 14-16; ECF No. 55 at 13-14 & n.6.  The record contains no evidence that the IGCE was leaked to Precise.  Under CACI, plaintiff's inference that Precise improperly obtained the IGCE falls clearly on the "suspicion" end of the spectrum, not on the "hard facts" end of the spectrum.  719 F.2d at 1582.  Under the standard of review applicable

here, this OCI allegation related to the IGCE, and plaintiff's OCI allegations in general, fail to justify an injunction of the contract award to Precise.

>    E.    Evaluation of Harmonia's Proposal

In Count I of its second amended complaint, plaintiff argues that its proposal, if appropriately evaluated, "would not have received a weakness under Evaluation Factor 1 and likely would have received a higher rating under that factor." ECF No. 50 at 11. In this regard, plaintiff asserts that the agency's evaluation of Harmonia's proposal was arbitrary and capricious, and that Harmonia was prejudiced because under an appropriate evaluation Harmonia would have had "a substantial chance of receiving the award." Id. The court begins its analysis of this protest ground by providing a brief summary of the relevant evaluation factors in the RFQ.

>    >    1.    Evaluation Factors 1 and 2

This is a best value procurement, where a trade-off between price and non-price factors determines the proposal providing the best value to the agency. ECF No. 35-7 at 27. A full explanation of the weighting scheme of the four evaluation factors is not needed to consider plaintiff's arguments in this protest. Among the three non-price evaluation factors, Evaluation Factor 1, "Relevant Experience," is more important than Evaluation Factor 2, "[Operations and Maintenance] O&M Technical Approach." Id. at 23, 27.

Harmonia and Precise received the same rating, "Satisfactory," on Relevant Experience. ECF No. 35-8 at 181. Precise received a higher rating, "Highly Satisfactory," on O&M Technical Approach, above Harmonia's rating of "Satisfactory" for this factor. Id. This single difference between the evaluation factor ratings for Harmonia and Precise is the foundation for the agency's determination that Precise was "slightly more highly rated" than Harmonia and the other offerors on the non-price evaluation factors. Id.

>    >    2.    Plaintiff's One Allegation of Evaluation Error

Harmonia alleges just one specific evaluation error in the evaluation of its proposal. In plaintiff's view, Harmonia's proposal received an erroneous "weakness" in Relevant Experience, which, if removed in an appropriate evaluation, might have tipped the balance so that Harmonia, not Precise, would have been selected as the BPA awardee. ECF No. 51 at 37-41; ECF No. 54 at 17-18. Defendant, on the other hand, argues that the

weakness assigned to Harmonia's Relevant Experience was a rational evaluation rating.[8] ECF No. 53 at 40-42.

The weakness in question is cited in the Technical Evaluation Report, ECF No. 35-8 at 85-137, which was produced by the agency's technical evaluation team.  The agency's technical evaluation team is referred to in the AR as the Technical Evaluation Team Program Advisory Group, or, more simply, the PAG.  Id. at 89.  According to the narrative provided by the PAG, Harmonia did not demonstrate enough relevant experience with three key technologies.  Id. at 97-98.  In each instance, the PAG noted that it was not convinced that Harmonia had demonstrated "sufficient knowledge, use, and experience with" each of these three technologies—even though the technology was mentioned in Harmonia's proposal.  Id.

The court notes that in the evaluation guidance materials shared internally within the FDA, proposal sections which "simply repeat or paraphrase" the solicitation's description of contract work do not indicate that the offeror "understands the contract requirements."  ECF No. 35-7 at 239.  Thus, simply making reference to the three key technologies that were identified in the solicitation section describing the evaluation of Relevant Experience might not meet the agency's expectations.  See id. at 29 (clearly identifying the three key technologies that would have an impact on an offeror's Relevant Experience rating).  Further, the evaluators were told that "questionable relevant expertise" might warrant a "weakness."  Id. at 250.  Thus, the PAG members were tasked with weighing whether each offeror's experience with the three key technologies was adequate for the EON IMS contract.

Plaintiff argues that the projects cited by Harmonia under Relevant Experience demonstrate adequate experience with the three technologies, and notes, paradoxically, that Harmonia had been awarded a strength in Evaluation Factor 2 for its subject matter expert, who was credited by the PAG for his extensive experience with one of the three required technologies, denoted "JIRA."[9]  ECF No. 51 at 37; see also ECF No. 35-8 at 99 (PAG citing this expert's "direct experience" with JIRA).  In plaintiff's view, the agency was inconsistent and irrational when it assigned the key technologies weakness to Harmonia's Relevant Experience.  ECF No. 54 at 18.  The government persuasively argues, however, that the agency could rationally read Harmonia's proposal as containing

---

[8]     Finding no flaws in the weakness assigned to Harmonia's proposal, the court need not reach defendant's argument that Harmonia's score, without this weakness, could not have improved to a point where its technical rating, overall, would have been higher than Precise's technical rating.  ECF No. 53 at 42-43.

[9]     JIRA is described both as an "issue-tracking application" and the "platform" used in the EON IMS.  ECF No. 35-7 at 74.

a weakness in Relevant Experience, notwithstanding the projects listed by Harmonia and the JIRA experience of its subject matter expert.  ECF No. 53 at 41-42; ECF No. 55 at 16.

The court defers to the agency's judgment as to technical evaluations, where reasonable.  Galen, 369 F.3d at 1339.  On this record, the FDA was not inconsistent or irrational when it noted a weakness in Harmonia's Relevant Experience.  As defendant argues, the agency could rationally find that "the projects submitted by Harmonia failed to demonstrate Harmonia's experience with the full range of technologies relevant to EON IMS."  ECF No. 55 at 16.  Similarly, the agency could rationally find that Harmonia's subject matter expert's "experience with JIRA was a rationally sufficient basis for the Agency to assign Harmonia a strength for that position on the key employee evaluation criterion for the O&M technical approach factor."  Id.  Although a different rational evaluation of Harmonia's Relevant Experience might not have found the weakness noted by the PAG, the court does not find that the PAG's rating of Harmonia's Relevant Experience was arbitrary or capricious.  Thus, plaintiff's protest ground alleging an error in the technical evaluation of its proposal is unavailing.

F.      Evaluation of Precise's Proposal

Plaintiff's final challenge in this protest is to the agency's evaluation of Precise's proposal.  According to Harmonia, the agency "ignored risks in Precise's quotation, including the fact that Precise significantly altered its labor mix in the option years."  ECF No. 50 at 15.  Plaintiff contends that there is a dramatic "staffing shift" in Precise's proposal, when the base year of the contract is compared to the final option year.  ECF No. 51 at 38-39 & nn.14-16.  Plaintiff notes, in particular, that in Precise's final option year, an applications engineer would be performing almost half of the labor hours in the contract, yet this category of employee is not even mentioned in Precise's technical proposal.  Id. at 38-39 (citing ECF No. 35-7 at 450-90).  Plaintiff contends that the evaluation of Precise's proposal was irrational because it failed to recognize the risks in the evolution of Precise's labor mix, which, in plaintiff's view, contradict the Highly Satisfactory rating Precise received for its O&M Technical Approach.  Id.  According to plaintiff, this "irrational oversight," along with plaintiff's other allegations of error in this procurement, invalidate the contract award to Precise.  ECF No. 54 at 19-20.

Central to plaintiff's allegation of error is the fact that the technical evaluation of Precise's proposal and the price evaluation of Precise's proposal were conducted separately, by teams that were composed of different individuals.  Id. at 19.  The evolution of an offeror's labor mix would be transparent to the price evaluators, as detailed in the price volume, ECF No. 35-7 at 195-203, but would be less transparent to the technical evaluators, because of the general nature of the narrative supplied by the offeror in the "staffing plan" included in the technical volume, id. at 24.  The parties strongly dispute whether the agency's evaluation of Precise's proposal, as evidenced by the price reasonableness determination, the technical evaluation, and the best value trade-

16

off analysis, shows that the agency was aware of and appropriately considered any risks associated with the "staffing shift" noted by plaintiff.

The court observes, first, that plaintiff does not allege that the agency's CO, in the context of her best value determination, relied on any fact that was clearly erroneous. Plaintiff's challenge to the agency's evaluation of Precise's proposal, therefore, is distinguishable from those protests which are sustained because the award decision was unreasonable because of factual errors.  Cf. Celta Servs., Inc., B-411835, B-411835.2, 2015 CPD ¶ 362, 2015 WL 7731719, at *7 & nn.8-9 (Comp. Gen. Nov. 2, 2015) (finding that the source selection authority relied on erroneous weaknesses that had been resolved in discussions).  Instead, plaintiff alleges that there was a risk in Precise's staffing plan, and that this risk was irrationally disregarded by the CO.  ECF No. 51 at 39.

This court's role is "to determine whether the agency's . . . analysis was consistent with the evaluation criteria set forth in the RF[Q]."  Alabama Aircraft, 586 F.3d at 1375-76 (citing Galen, 369 F.3d at 1330).  The court has reviewed Precise's price and the agency's price reasonableness analysis of Precise's proposal, and finds that the agency's price evaluation was reasonable and consistent with the terms set forth in the RFQ. Similarly, the court has reviewed Precise's technical proposal and the PAG's technical evaluation of Precise's proposal, and finds that the technical ratings received by Precise were reasonable and consistent with the evaluation scheme set forth in the RFQ.  Further, the CO's best value determination rationally determined that Precise offered the best value proposal in this procurement.

As defendant argues, Precise's staffing plan was not misleading and was understood by the CO.  ECF No. 53 at 43-47; ECF No. 55 at 18-21.  While it is true that Precise's technical proposal might have described the evolution of its labor mix in more detail, there was enough detail in Precise's staffing plan to support the ratings received by Precise from the PAG.  See ECF No. 35-7 at 466-68.  There is also evidence that the CO had all the necessary information before her to verify and adopt the technical ratings received by Precise from the PAG.  ECF No. 35-8 at 177-78, 181-83.

On this record, the court does not find that the CO's assessment of the risk in Precise's proposal was arbitrary or capricious.  The court agrees, instead, with the government's rebuttal of Harmonia's challenge to the agency's evaluation of Precise's proposal:

> Accordingly, Harmonia's claim that the Agency was not aware of, or did not understand, the details of the labor categories and the hours for each category that Precise proposed for the base year and for each option year is belied by:  (a) the level of detail regarding the proposed labor mixes for the base and option years that Precise described and set forth with specificity on the face of its proposal; (b) the reflection of this information in the Agency's technical and price evaluations; and (c) the evident attention, as demonstrated

by the BPA Award Decision & Documentation, that the Agency paid to these evaluations and to Precise's option-year labor-mix information in performing its best value analysis.

ECF No. 55 at 21.  Because the CO's assessment of risk in Precise's proposal survives arbitrary and capricious review, this final protest ground raised by Harmonia, too, is unavailing.

      G.      Permanent Injunctive Relief Not Warranted

Plaintiff has not succeeded on the merits of its protest.  "Because proving success on the merits is a necessary element for a permanent injunction," Dell Fed. Sys., L.P. v. United States, 906 F.3d 982, 999 (Fed. Cir. 2018) (footnote omitted), no injunctive relief is warranted in this case.  This protest must be dismissed.

IV.     Conclusion

Accordingly,

(1)     Plaintiff's motion for judgment on the AR, ECF No. 51, is **DENIED**;

(2)     Defendant's cross-motion for judgment on the AR, ECF No. 53, is **GRANTED**;

(3)     The clerk's office is directed to **ENTER** final judgment for defendant and intervenor-defendant, **DISMISSING** plaintiff's second amended complaint, with prejudice; and,

(4)     On or before **September 20, 2019**, the parties shall **CONFER** and **FILE** a **notice** of filing, attaching a proposed redacted version of this opinion, with any competition-sensitive or otherwise protectable information blacked out.

IT IS SO ORDERED.


                                s/Patricia E. Campbell-Smith
                                PATRICIA E. CAMPBELL-SMITH
                                Judge